UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ALEXIS H., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00204-DLP-JMS |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner for Operations, Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## Order on Complaint for Judicial Review

Plaintiff Alexis H.[1] requests judicial review of the denial by the

Commissioner of the Social Security Administration ("Commissioner") of her

application for Social Security Disability Insurance ("DIB") under Title II of the

Social Security Act ("the Act") and of her application for Supplemental Security

Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. §§ 301, 416(i), 423(d),

1382c(a)(3). For the reasons set forth below, this Court hereby **REVERSES** the

ALJ's decision denying Plaintiff benefits and **REMANDS** this matter for further

consideration.

## I. Procedural Background

On October 18, 2013, the Plaintiff filed for disability insurance benefits under

Title II and supplemental security income under Title XVI of the Social Security

---

[1] The Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

Act, alleging her disability began on October 25, 2012. The claims were denied initially and upon reconsideration. The Plaintiff then filed a written request for a hearing on June 12, 2014, which was granted.

On January 25, 2016, Administrative Law Judge Shane McGovern conducted the hearing, where the Plaintiff and a vocational expert testified. On February 22, 2016, the ALJ issued an unfavorable decision finding that the Plaintiff was not disabled as defined in the Act. The Appeals Council denied the Plaintiff's request for review of this decision on February 28, 2017, making the ALJ's decision final. Plaintiff now seeks judicial review of the Commissioner's decision. *See* 42 U.S.C. § 1383(c)(3).

## II. STANDARD OF REVIEW

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, Plaintiff's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-

step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant—in light of her age, education, job experience and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard

demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Plaintiff is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

In this substantial-evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d at 872.

# III. DISCUSSION

## A. Factual Background

Plaintiff was born on December 9, 1955, and was 56 years old at the time of her alleged disability date in 2012. [Dkt. 26 at 4.] She completed high school in 1974. [Dkt. 17-7 at 19 (R. 267).] The Plaintiff does not drive because of vision problems and has a history of smoking. [Dkt. 17-8 at 5 (R. 338).] Plaintiff previously worked as a cook in a restaurant and a hotel. [*Id.*]

## B. Medical History

On September 6, 2011, the Plaintiff was examined by consultative examiner Shuyan Wang MD, wherein Dr. Wang noted that the Plaintiff had decreased range of motion in her spine, shoulders and elbows. [Dkt. 17-8 at 1 (R. 335).] Dr. Wang also observed tenderness in the Plaintiff's back, shoulders, elbows, left hip, and left knee. [Dkt. 17-8 at 7-8 (R. 340-41).] Ultimately, Dr. Wang found that the Plaintiff suffered from chronic back pain, arthritis, chronic headaches and dizziness, hypertension, diabetes, hyperlipidemia, coronary artery disease, depression, anxiety, obesity, sickle cell trait, intermittent blurry vision, and very slight scoliosis. [Dkt. 17-8 at 7, 9 (R. 340, 342).] Dr. Wang concluded that the Plaintiff needed treatment and follow-ups for all of her medical problems, but, with appropriate treatment for pain, she should be able to do light work. [Dkt. 17-8 at 10 (R. 343).] Dr. Wang also recommended additional restrictions for standing, walking, climbing, lifting above the waist, and exposure to extreme temperature changes and high humidity. [*Id.*]

A few months later, on December 1, 2011, Dr. Neil G. Kabous performed various heart procedures on the Plaintiff. During the procedure, he discovered a stent in the Plaintiff's right coronary artery. [Dkt. 17-10 at 25-26 (R. 459-60).] At the time of the examination, Dr. Kabous noted that the Plaintiff had developed in-stent restenosis. [Dkt. 17-10 at 25 (R. 459).] Based on these findings, Dr. Kabous diagnosed the Plaintiff with moderate coronary artery disease. [*Id*.]

Almost two years later, on December 16, 2013, consultative examiner Dr. Olivia Cronin examined the Plaintiff, finding that the Plaintiff had limited range of motion in her back, neck, and shoulders. [Dkt. 17-13 at 68, 72 (R. 731, 735).] Plaintiff refused to participate in hip mobility testing because she was fearful of the pain that the testing may cause. Dr. Cronin was not, therefore, able to assess Plaintiff's range of motion in her hips. [*Id*.] Dr. Cronin noted in the record the Plaintiff's use of a cane, but found that the cane "was not medically necessary." [Dkt. 17-13 at 72 (R. 735).]  Later on in her report, however, Dr. Cronin noted that the cane "was medically required for ambulation, as [the Plaintiff] refused to walk without it . . . ." [*Id*.] Dr. Cronin concluded that the Plaintiff suffered from chronic back pain due to mild-to-moderate degenerative disc changes in the lumbar spine, experienced chest pain due to coronary artery disease, and headaches due to hypertension and diabetes. [Dkt. 17-13 at 73 (R. 736).]

In January 2014, the Plaintiff returned to Dr. Kabous because she was experiencing, among other things, chest pains, neuropathy in her feet, dizziness, and fainting spells. [Dkt. 17-15 at 68 (R. 841).] Dr. Kabous concluded that the

Plaintiff continued to suffer from coronary artery disease and that her foot deformity was caused by her diabetes. [Dkt. 17-15 at 69-70 (R. 842-41).]

In March 2014, the Plaintiff underwent a computed tomography ("CT") scan of her head to address her ongoing issues with headaches. Dr. Michael Brown reviewed the CT scan and concluded that the minor changes found in the Plaintiff's deep white matter could represent small vessel disease. [Dkt. 17-17 at 52 (R. 958).]

A few months later in July 2014, an x-ray was performed on the Plaintiff's hip after she fell in the bath tub. [Dkt. 17-17 at 22 (R. 928).] The x-ray showed no fractures or dislocations, but did show mild degenerative changes. [*Id.*]

Throughout 2015, the Plaintiff was admitted several times to the emergency room at Union Hospital for complaints of chest pain and fatigue. [Dkt. 17-21 (R. 1202-84).] On March 10, 2015, Dr. Kabous performed a second cardiac catheterization on the Plaintiff. And concluded that the Plaintiff's mild-to-moderate coronary artery disease had now become moderate-to-severe. [Dkt. 17-20 at 34 (R. 1152).] On September 27, 2015, an x-ray was taken of the Plaintiff's back that showed space narrowing throughout the cervical spine, but was otherwise unremarkable. [Dkt. 17-22 at 3 (R. 1285).]

In January 2016, a magnetic resonance imaging test ("MRI") was performed on the Plaintiff's back because she was reporting that her chronic neck and back pain had worsened. The MRI found multilevel degenerative spondylosis at C3 to C6 in the Plaintiff's neck. [Dkt. 17-26 at 70 (R. 1527).] At the same time, an

electromyogram test ("EMG") was performed and found moderate carpal tunnel syndrome in both arms. [Dkt. 17-26 at 73 (R. 1530).]

## C. ALJ Decision

In determining whether the Plaintiff qualified for disability benefits under the Act, the ALJ first determined that the Plaintiff met the insured status requirements of the Act through June 30, 2017. The ALJ then went through the five-step analysis required by 20 C.F.R. § 404.1520(a). At step one, he determined that the Plaintiff had not engaged in substantial gainful activity since October 25, 2012, even though the Plaintiff had engaged in part-time work throughout 2013 and 2014. [Dkt. 17-2 at 15 (R. 14).]

At step two, the ALJ found Plaintiff's severe impairments to include "coronary artery disease with stenting, in-stent restenosis, osteoarthritis, obesity, history of migraines, claudication, diabetes mellitus, degenerative disc disease, and carpal tunnel syndrome." [Dkt. 17-2 at 15-16 (R. 14-15).]

The third step is an analysis of whether the plaintiff's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals a Listing. [Dkt. 17-2 at 16-18 (R. at 15-17).]

Moving to the fourth step of the five-step sequential evaluation process, the ALJ weighed the medical evidence, the vocational expert's testimony, and the

Plaintiff's testimony and work history, and determined that Plaintiff had the RFC to perform light work, except with the limitations that she could:

- never climb ladders, ropes, or scaffolds;

- occasionally climb ramps and stairs;

- occasionally balance, stoop, kneel, crouch, and crawl;

- perform frequent handling, fingering, and feeling bilaterally;

- have no exposure to excessive vibration; and

- have no use of dangerous moving machinery or exposure to unprotected heights.

[Dkt. 17-2 at 18 (R. 17).] Based on her RFC, the ALJ determined that Plaintiff was capable of performing her past relevant work as a short order cook, which would require only a capacity for light work. [Dkt. 17-2 at 23 (R. 22).] Based on these findings, the ALJ concluded that the Plaintiff was not disabled under the Act. [*Id.*]

### D. Analysis

Plaintiff challenges the ALJ's decision on five grounds: she argues that the ALJ 1) did not account for her mental limitations in his RFC; 2) failed to properly address the opinion of consultative examiner Dr. Olivia Cronin, MD and the Plaintiff's use of a cane; 3) did not consider the opinion of consultative examiner Dr. Shuyan Wang, MD; 4) engaged in a patently wrong evaluation of objective evidence; and 5) erroneously weighed the opinion evidence of two state agency physicians. Each of these arguments will be addressed in turn.

*i.* *Mental Residual Functional Capacity Finding*

First, the Plaintiff argues that the ALJ's assessed mental RFC fails to account for her mental limitations, and thus renders the vocational expert's testimony unreliable. In crafting his RFC at step four, the Plaintiff alleges that the ALJ failed to account for any of the mental impairments he had found at step two.

When crafting a claimant's RFC, "the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'" *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. §§ 404.1527(d),(f); 404.1545(a)(2),(b),(c)). Additionally, Social Security Ruling 96–8p states that

> [t]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF [Psychiatric Review Technique Form.]

Thus, when the ALJ finds that a claimant suffers from mild mental limitations caused by depression, the ALJ should analyze those limitations when determining the claimant's RFC. *See Synal v. Colvin*, No. 1:15-cv-01448-TAB-JMS, 2016 WL 4119099 at *4 (S.D. Ind. Aug. 3, 2015) ("The ALJ found mild limitations in three functional areas caused by Synal's depression, but he completely omitted them from the RFC and hypothetical he posed to the VE. Remand is therefore necessary."); *See*

*also Dross-Swart v. Astrue*, 872 F. Supp. 2d 780, 795 (N.D. Ind. 2012) ("the mild limitations in activities of daily living, social functioning, and concentration, persistence and pace caused by her diagnoses of MDD, Adjustment Disorder with mixed anxiety, and depression, that the ALJ adopted in her opinion should have been incorporated into the ALJ's RFC analysis.")

At the step two analysis, the ALJ found that the Plaintiff's mental impairment of dysthymia (persistent depression) caused mild limitations in her activities of daily living, social functioning, and concentration, persistence and pace. [Dkt. 17-2 at 16-17 (R. 15-16).] In conducting the RFC assessment at step four, the ALJ stated that his RFC "assessment reflect[ed] the degree of limitation that he had found in the 'paragraph B' mental function analysis." [Dkt. 17-2 at 17 (R. 16).] Then, at the end of his step four explanation, the ALJ explained that "[t]he above residual functional capacity assessment is supported by the totality of the evidence of [the] record, including the opinion of the State agency psychological consultant who found no severe mental impairment." [Dkt. 17-2 at 22 (R. 22)].

The question for the Court to consider is whether these two statements from the ALJ's opinion demonstrate that the ALJ analyzed the Plaintiff's mild mental limitations when determining the Plaintiff's RFC.

The ALJ's first statement essentially substitutes his step two paragraph B analysis for his mental RFC analysis. However, Social Security Ruling 96–8p specifically notes that the "paragraph B" analysis is not an RFC assessment, but, rather, requires the ALJ to include the effects of mild mental limitations into the

RFC analysis. SSR 96–8p. The ALJ's second statement also fails to adequately analyze Plaintiff's mental limitations because it does no more than point out that her mental limitations are not severe. While Plaintiff's mild limitations may not change the ALJ's ultimate RFC determination, he was still required to consider and analyze them when he crafted Plaintiff's RFC. *See Craft*, 539 F.3d at 677; *Dross-Swart*, 872 F. Supp. 2d at 795; *Synal*, 2016 WL 4119099 at * 4; *see also Brown v. Colvin*, 219 F. Supp. 3d 121, 127 (D.D.C. 2016) (holding that the ALJ's mental RFC findings lacked proper explanation when he spent multiple pages discussing the claimant's mental impairments at step three but only two paragraphs explaining his mental RFC determination.) Without this analysis in calculating the RFC, the Court is unable to conclude that the ALJ built the requisite logical and accurate bridge from the evidence to his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Additionally, "[i]f the ALJ relies on testimony from a vocational expert ("VE"), the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by the medical evidence in the record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Indoranto v. Barnhart*, 374 F.3d 470. 473-74 (7th Cir. 2004)). Here, the ALJ's hypothetical, like his RFC determination, did not address Plaintiff's mental impairments. Therefore, the testimony elicited from the vocational expert was unreliable and also constitutes reversible error. *See Varga*, 794 F.3d at 814 ("Because a hypothetical posed to a VE must incorporate *all* of the claimant's limitations supported by the medical record . .

. we find that the ALJ committed reversible error."); *see also Synal*, 2016 WL 4119099 at * 4.

Because the ALJ's assessed RFC did not adequately address Plaintiff's mental impairments that he found at steps two and three, the Court concludes that remand is appropriate so that the ALJ can address the effects of the Plaintiff's mild mental limitations in his determination of the Plaintiff's RFC.

ii.    *Consultative Examiner Olivia Cronin and Plaintiff's Use of a Cane*

Plaintiff next argues that the ALJ failed to address certain contradictions in Dr. Olivia Cronin's report. Specifically, she argues that because the ALJ failed to address these contradictions in his opinion, his RFC determination is not supported by substantial evidence.

Dr. Cronin's report presents a conflict regarding the medical necessity of the Plaintiff's use of a cane. Dr. Cronin's report first states that the Plaintiff "walked with an assistive device which was not medically necessary," but then goes on to state that "[i]t does appear that this assistive device was medically required for ambulation, as she refused to walk  without it because she felt too imbalanced and unsteady and like she would fall." [Dkt. 17-13 at 72 (R. 735).] At no point in her report does Dr. Cronin clarify which conclusion is accurate. Despite this contradiction, the ALJ credited only the former conclusion, but did not explain why; in fact, the ALJ made no mention of the contradiction at all. [Dkt. 17-2 at 21-22 (R. 20-21).]

In addition to Dr. Cronin's report, the ALJ discussed Plaintiff's use of a cane in other parts of his decision. His opinion states that Plaintiff testified "that she did not have a prescription for an assistive device but simply used one from a friend as needed" [Dkt. 17-2 at 20 (R. 19)] and "that she can walk 3 to 4 blocks or for 20 minutes without her cane." [Dkt. 17-2 at 19 (R. 18).] However, these statements misstate Plaintiff's testimony. A review of the hearing transcript reveals that Plaintiff testified that she did have a prescription for a cane, [Dkt. 17-2 at 54-55 (R. 53-54),] and supported this statement by presenting a prescription for the cane from PMG Family Practice. [Dkt. 17-26 at 66 (R. 1523).] Additionally, while Plaintiff did testify that she could walk three to four blocks or for about twenty minutes, it is unclear whether she testified that she could walk that far or for that long *without a cane*. The testimony in question proceeded as follows:

[ALJ:] All right. So how long are you able to stand at one time?

A: Oh goodness. I could stand maybe about half an hour, if that much.

Q: Is that while you use a cane?

A: Uh-huh. Yes.

Q: How long can you walk at one time?

A: Probably about three, four blocks.

Q: Is it—how long does it take you to walk three of four blocks?

A: About 20 minutes.

[Dkt. 17-2 at 64 (R. 63).] While the ALJ clarified that his inquiry regarding Plaintiff's ability to stand accounted for her use of a cane, he failed to make the

same clarification for his inquiry regarding her ability to walk. Thus, it is unclear if Plaintiff's testimony about her ability to walk accounted for the use of a cane. Moreover, the ALJ's opinion does not clarify or explain this exchange; instead it simply concludes that Plaintiff's testimony was that she could walk three to four blocks or twenty minutes without a cane.

Although an ALJ is not required "to address in writing every piece of evidence or testimony presented, he [is] required to provide 'an accurate and logical bridge' between the evidence and his conclusions." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008)). Here, the ALJ's decision did not resolve the obvious contradiction in Dr. Cronin's report and did not accurately represent Plaintiff's testimony regarding her use of a cane and ability to walk. Therefore, the Court finds that the ALJ did not build an accurate and logical bridge from the evidence to his conclusion, and the case is remanded on this issue.

### iii. *Consultative Examiner Dr. Shuyan Wang*

Thirdly, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he failed to consider the 2011 opinion of consultative examiner Dr. Shuyan Wang. The Commissioner argues that the ALJ did not need to consider the opinion of Dr. Wang because the examination occurred over a year before the alleged onset date.

As discussed above, Dr. Wang examined Plaintiff in September 2011 and concluded that Plaintiff could perform light work with additional restrictions for

standing, walking, climbing, lifting above the waist, and exposure to extreme temperature changes and high humidity. Plaintiff claims that the ALJ failed to consider that Dr. Wang included additional restrictions for standing and walking and this is particularly harmful to her.

The ALJ does not need to address every piece of evidence in his decision, but he cannot ignore an entire line of evidence that undermines the conclusions he made. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012). Moreover, the ALJ must consider *all* of the evidence in the administrative record "[r]egardless of its source." 20 C.F.R § 404.1527(c). The Seventh Circuit has indicated that this includes evidence that predates the claimant's alleged onset date. In *Eichstadt v. Astrue*, 534 F. 3d 663 (7th Cir. 2008), the ALJ considered evidence that pre-dated the expiration of claimant's insured status and the court indicated that this examination was "required." *Id.* at 667; *see also Barton v. Berryhill*, No. 1:16-cv-03219-DML-TWP, 2018 U.S. Dist. LEXIS 45245, at * 10–11 (S.D. Ind. Mar. 20, 2018) (collecting cases) ("The Commissioner's argument that the ALJ was free to ignore Dr. Griffin's expert medical testimony from 2009 because it pre-dated Mr. Barton's 2012 application for SSI benefits is rejected. . . . The court is aware of no authority for such a proposition (and the Commissioner does not cite any); it is inconsistent with the SSA's regulations; it is illogical; and it is contrary to case law."); *Misener v. Astrue*, 926 F. Supp. 2d 1016, 1034 (N.D. Ind. 2013) ("The Court is aware that the ALJ may not simply ignore record evidence which predates the alleged onset date."); *Doherty v. Astrue*, No. 1:11–CV–00838, 2012 WL 4470264, at *6 (S.D. Ind. Sept. 27, 2012)

("The court finds that the ALJ erred in failing to consider medical evidence simply because it pre-dated Mr. Doherty's alleged disability onset date. The ALJ must consider 'all' evidence in the administrative record.").

In his opinion, the ALJ makes no mention of or reference to Dr. Wang's examination. This makes it impossible for the Court to know if the ALJ considered this evidence but awarded no weight, or simply disregarded it because it predated Plaintiff's alleged onset date. As in *Barton*, the Commissioner cites no authority to support her contention that evidence predating the alleged onset date does not need to be considered. Thus, the Court finds that the ALJ failed to consider all evidence in the administrative record, in violation of the SSA's regulations. Accordingly, the Court finds that remand is required on this issue as well.

iv.    *Evaluation of Objective Evidence*

Plaintiff's fourth argument is that the ALJ's evaluation of the objective evidence was patently wrong. This argument appears to stem from the ALJ's finding that "the evidence of the record does not document difficulty with balance to the degree alleged by the claimant, but rather has more than one instance where the claimant is shown to give poor effort." [Dkt. 17-2 at 21 (R. 20).] The Plaintiff contests this finding by pointing to various instances in the record where her difficulty with balance and impaired gait are discussed. To substantiate this argument, the Plaintiff also highlights omitted qualifying language in the doctors' notes indicating that her lack of effort was a result of pain.

Since the Court has already directed the ALJ to give further review to the evidence, specifically as it relates to Plaintiff's ability to balance and walk without a cane, any review regarding Plaintiff's use of a cane will also affect the ALJ's findings regarding balance and effort. Therefore, upon remand, the ALJ shall issue findings regarding Plaintiff's ability to balance, and her effort related thereto, consistent with his review of the evidence.

      *v.*    *Weighing of Opinion and Medical Evidence*

The Plaintiff's final argument is that the ALJ erroneously gave considerable weight to the opinions of two state agency physicians, Dr. Sands and Dr. Whitley. The Plaintiff argues that because these physicians did not examine her in person and did not have the opportunity to review all the medical records in her file, the ALJ should not have given their opinions considerable weight.

An ALJ may rely on the opinions of physicians who are experts in social security disability evaluation and who review a claimant's complete medical records, even if they do not examine the claimant in person. *See Flener v. Barnhart*, 361 F.3d 442, 447-48 (7th Cir. 2004). The introduction of additional medical evidence to the record after state physicians issue their opinions does not necessarily prevent the ALJ from relying on the state physicians' opinions. *Keys v. Berryhill*, 679 F. App'x 477, 480-81 (7th Cir. 2017). However, when the new evidence is potentially decisive, or would alter the opinion of the physicians, it should be subjected to medical scrutiny. *See Goins v. Colvin*, 764 F.3d 677, 680-81 (7th Cir. 2014).

The Plaintiff claims that the new medical evidence includes 1) her January 2014 visit with Dr. Kabous' where he diagnosed her with a foot deformity stemming from her diabetes [Dkt. 17-15 at 69-70 (R. 842-41)]; 2) the Plaintiff's March 2014 CT scan that found minor changes in deep white matter in her brain [Dkt. 17-17 at 52 (R. 958)]; 3) the Plaintiff's July 2014 x-ray performed after she fell in the bath tub that found mild degenerative changes in her hip [Dkt. 17-17 at 22 (R. 928)]; 4) the Plaintiff's complete cardiac catheterization performed in March 2015 that indicated Plaintiff's coronary artery disease had now become moderate-to-severe [Dkt. 17-20 at 34 (R. 1152)]; 5) the September 2015 x-ray of Plaintiff's back that showed space narrowing throughout the cervical spine [Dkt. 17-22 at 3 (R. 1285)]; 6) the Plaintiff's January 2016 MRI that found multilevel degenerative spondylosis at C3 to C6 of the Plaintiff's neck [Dkt. 17-26 at 70 (R. 1527)]; and lastly 7) the EMG test that found moderate carpal tunnel syndrome in the Plaintiff's hands. [Dkt. 17-26 at 73 (R. 1530).] The Plaintiff argues that this new evidence would have been decisive in the physicians' findings in 2014, if reviewed.

As an initial matter, after reviewing the record, it appears that state examiner Dr. Whitley was, in fact, provided Dr. Kabous' report from January 2014, which diagnosed the Plaintiff's foot deformity. [Dkt. 17-3 at 38 (R. 116).] Nothing in the record indicates that this report was not included. Therefore, the Court finds Dr. Whitley's opinion accounted for this evidence, and the Court will not consider it as "new evidence" in this discussion. The Court, however, is not clear on whether the remaining new evidence was shared with either Dr. Whitley or Dr. Sands.

In his decision, the ALJ made it clear that the Plaintiff had submitted new evidence at the hearing, for which neither Dr. Whitley's or Dr. Sands' opinions had accounted, [Dkt. 17-2 at 20, 22 (R. 19, 21),] but still chose to give their opinions considerable weight.

The question, here, is whether the ALJ should have submitted the new medical evidence to medical scrutiny to assess whether the new evidence could have changed the reviewing physicians' opinions. *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018); *see also Goins*, 764 F.3d at 680 (finding that the ALJ's fatal flaw was failing to submit a new MRI to medical scrutiny). The Seventh Circuit has repeatedly warned against the dangers of lawyers and judges attempting to interpret medical reports such as MRIs. *See Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016); *Goins*, 764 F.3d at 680.

Here, the new medical evidence that is most concerning to the Court is the Plaintiff's January 2016 MRI that found mild to moderate issues with the Plaintiff's neck from C3 to C6. At the hearing, the VE testified that the Plaintiff would need full mobility in her neck to perform her past work. [Dkt. 17-2 at 75 (R. 74).] Without the medical interpretation of the January 2016 MRI, the Court is unable to determine if this new medical evidence would have changed the physicians' opinions of the Plaintiff's physical abilities. Here, the ALJ recited the findings of the MRI and then determined that it did not support more restrictive limitations. [Dkt. 17-2 at 20, 22 (R. 19, 21).] The only way that the ALJ could have come to this conclusion is if he interpreted the MRI on his own. Therefore, the ALJ's decision must be

remanded, and the new medical evidence should be submitted to a medical expert for review.

## E.  CONCLUSION

For the reasons detailed herein, this court **REVERSES** the ALJ's decision denying Plaintiff benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g). Final judgment will issue accordingly.

So ORDERED.

Date: 8/2/2018

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

Nicholas Thomas Lavella
KELLER & KELLER
nlavella@2keller.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

Matthew Frederick Richter
KELLER & KELLER LLP
mrichter@2keller.com

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com